IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELANIE OSBORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-44-B-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Melanie Osborn seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

The undersigned issued Findings, Conclusions, and Recommendation of the
United States Magistrate Judge on February 6, 2017 advising the Court to affirm the
ALJ's decision. *See* Dkt. No. 23.

Ms. Osborn filed objections to the Findings, Conclusions, and Recommendation,
*see* Dkt. No. 24, which the Court referred to the undersigned for review, *see* Dkt. No.
25.

For the reasons explained and to the extent below, the undersigned
WITHDRAWS his February 6, 2017 Findings, Conclusions, and Recommendation [Dkt.
No. 23] and concludes that the hearing decision should be reversed and remanded.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including arthritis, fibromyalgia, obesity, asthma, irritable bowel syndrome, depression, and anxiety. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on June 12, 2015. At the time of the hearing, Plaintiff was 51 years old. She is a high school graduate, attended college for three classes, and has past work experience as an accounting clerk, bookkeeper, and office manager. Plaintiff has not engaged in substantial gainful activity since August 7, 2013.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from arthritis, fibromyalgia, obesity, asthma, and irritable bowel syndrome, the ALJ appears to have concluded that Plaintiff's impairments are "nonsevere." *See* Administrative Record [Dkt. No. 14 ("Tr.")] at 17 (describing Plaintiff's impairments as nonsevere); *but see id.* at 16 (explaining that Plaintiff "has the following severe impairments"). Such a finding would be sufficient to find that Plaintiff is not disabled. *See* 20 C.F.R. § 404.1520(c) (noting that if "you do not have a severe impairment," then you "are, therefore, not disabled."). The ALJ nevertheless proceeded to find that the severity of those impairments did not meet or equal any impairment listed in the social security regulations and that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as an accountant clerk, bookkeeper, and office

manager. Relying on a vocational expert's testimony, the ALJ also found that Plaintiff was capable of working as a general clerk, currency clerk, and order detailer—jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision because, according to her, (1) the ALJ failed to conduct the detailed analysis 20 C.F.R. §§ 404.1527(c), 416.927(c) [hereinafter Section 404.1527(c)] requires before rejecting two physician opinions, (2) the ALJ's decision to reject these physician opinions is not supported by substantial evidence, (3) the ALJ failed to at all consider a state agency physician opinion, and, (4) as a result, the ALJ's determination concerning the severity of her condition is not supported by substantial evidence.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than

a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Ms. Osborn contends that the ALJ erred for several reasons. She argues that (1) the ALJ failed to conduct the detailed analysis Section 404.1527(c) requires before rejecting Dr. Fehmida Zahabi and Dr. Christina Ryser's respective opinions, Dkt. No. 24 at 5-11, (2) the ALJ's decision to reject Dr. Zahabi's and Dr. Ryser's respective opinions is not supported by substantial evidence, *id.* at 2-5, (3) the ALJ failed to discuss State Agency Consultant Dr. Mark Schade's opinion, *id.* at 14, and (4) as a result, the ALJ's determination concerning the severity of her condition is not

supported by substantial evidence, *see id.* at 10-16 (discussing the aforementioned errors as evidence that the ALJ's finding that Ms. Osborn's conditions are nonsevere is not supported by substantial evidence).

Because Ms. Osborn's arguments concerning the ALJ's severity determination largely depend on the other purported errors that she identifies, the undersigned does not discuss this argument separately. The undersigned, instead, concludes that the ALJ's severity determination is not supported by substantial evidence because the undersigned agrees that the ALJ committed at least some of the material errors that Ms. Osborn identifies for the reasons explained below.

I.    The ALJ erred by assigning Dr. Zahabi's opinion limited weight.

Ms. Osborn contends that the ALJ erred by assigning the opinion of her treating physician, Dr. Zahabi, "very limited weight." *See* Dkt. No. 17 at 18, 24. She specifically argues that the ALJ rejected her treating physician's opinion without conducting the detailed analysis Section 404.1527(c) requires and that the decision is not supported by substantial evidence. The undersigned agrees with both contentions.

A.    The ALJ was required to conduct the detailed analysis Section 404.1527(c) requires.

In *Newton v. Apfel*, the United States Court of Appeal for the Fifth Circuit concluded that the ALJ was required to consider each of the Section 404.1527(c) factors before declining to give any weight to the claimant's treating specialist. 209 F.3d 448, 456 (5th Cir. 2000). But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects

the sole medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. Aug. 4, 2009); *accord Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth her analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See Qualls* 339 F. App'x at 466-67; *Kneeland*, 850 F.3d at 760.

Here, the ALJ does not cite to a competing opinion from a treating or examining physician.

The Commissioner suggests – and the undersigned had previously assumed – that the ALJ did consider a competing medical opinion, namely that of Dr. Jimmy Yoon. *See* Dkt. No. 21 at 15 (the Commissioner construing Dr. Yoon's report as "reliable evidence from another treating or examining source" that allows the ALJ to bypass a Section 404.1527(c) analysis). Dr. Yoon conducted a consultative exam of Ms. Osborn and observed that she "had 5/5 strength throughout and intact reflexes," among other medical observations which the ALJ took note of in her decision. *See* Tr. at 6-7 (ALJ referencing examination notes from Dr. Yoon's findings).

But Dr. Yoon's examination notes do not constitute a "competing medical opinion" that would excuse the ALJ from conducting the detailed analysis that Section 404.1527(c) requires. Dr. Yoon tracked Ms. Osborn's symptoms at the moment that he conducted the consultative exam. He was not "called upon to explain how [Ms. Osborn's medical conditions] affected [her] work-related limitations." *Wilkerson v. Berryhill*, No.

8

3:16-cv-851-BN, 2017 WL 109160, at *3 (N.D. Tex. March 23, 2017) (internal quotation and citation omitted); *see also Kneeland*, 850 F.3d at 759 ("Dr. Bernauer's opinion meets [the] definition [of a medical opinion] as he examined Kneeland, noted observations from that examination, and opined on her work limitations").

As such, Dr. Yoon's notes "cannot be said to have provided a competing opinion." *Wilkerson*, 2017 WL 109160, at *3. "'[M]edical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities [she] would be able to perform do not controvert the opinion of Plaintiff's treating physician.'"*Id.* (quoting *Anderson v. Colvin*, No. 3:15-cv-781-BN, 2016 WL 299019, at *6 (N.D. Tex. Jan. 25, 2016) (citing *Jackson v. Astrue*, No. 4:10-cv-150-Y, 2011 816850, at *9 (N.D. Tex. Feb. 15, 2011)).

The ALJ also purports to assign substantial weight to the opinion of a DDS physician, Dr. Matthew Wong, who found that Ms. Osborn only has "mild mental work-related limitations." Tr. at 21. But Dr. Wong did not actually examine Ms. Osborn. As such, the ALJ could not elect to defer to him in place of a treating physician. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980) to explain that a non-examining physician's opinion "do[es] not provide substantial evidence" when the non-examining physician's conclusions "either contradict or are unsupported by findings made by an examining physician.").

The ALJ was required to conduct the detailed analysis Section 404.1527(c)(1) requires before rejecting Dr. Zahabi's findings.

B.    The ALJ did not consider each of the Section 404.1527(c) factors.

Although the ALJ did not explicitly provide that she conducted a Section 404.1527(c) analysis, the Commissioner argues that it is apparent from the decision that the ALJ, in fact, considered each of these factors. *See* Dkt. No. 21 at 5. These factors include: (1) the physician's length of treatment; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456.

The undersigned acknowledges that the ALJ discusses facts that suggest that the ALJ might have considered each of the Section 404.1527(c) factors. But it is not clear from the ALJ's opinion whether she truly considered them as part of the "detailed analysis" that Section 404.1527(c) requires.

For example, the Commissioner correctly notes that the ALJ acknowledges that Dr. Zahabi was Plaintiff's rheumatologist from 2012 to 2015 and references some of their individual examinations. Dkt. No. 21 at 10-12. But the ALJ does not then explain whether or not "the treating source has seen [Ms. Osborn] ... long enough to have obtained a longitudinal picture of [her] impairment," as the regulations contemplate she would (Factor No. 1). *See* 20 CFR § 404.1527(c)(2)(i).

The Commissioner also correctly notes that the ALJ discusses her perceived shortcomings of Dr. Zahabi's findings at length. Dkt. No. 21 at 10-12. But the ALJ does not appear to discuss the evidence supporting Dr. Zahabi's conclusions as thoroughly. For instance, the ALJ notes that "a September 2014 emergency room examination ... revealed no appreciable pain to palpation of the musculoskeletal system," but does appear to at all credit the abdominal pain and other symptoms that prompted her to go to the emergency room to begin with, *see* Tr. at 390, 397-98.

While it is conceivable that the ALJ considered this evidence more thoroughly than the decision suggests, the undersigned cannot assume that she fully considered the support both for and against the physician's opinion (Factor No. 4), or the consistency of Dr. Zahabi's opinion with the record "as a whole" (Factor No. 5). *See Jackson v. Colvin*, No. 4:16-cv-124-KPJ, 2017 WL 875835, at *8 (E.D. Tex. March 6, 2017) (finding that "[t]he ALJ did not adequately analyze the regulatory factors" because "several" were "considered ... in conclusory fashion").

The ALJ may elect to reject a treating physician's opinion for good cause. But when she chooses to do so, it is her obligation to clearly articulate precisely why she has rejected this opinion. *See Kneeland*, 850 F.3d at 760-61 (requiring the ALJ to "on remand, upon completing a holistic evaluation of Kneeland's impairments that takes into account the physical, cognitive, and psychological evidence and explaining what weight he affords the various medical opinions"). And the ALJ failed to do so here.

The undersigned acknowledges that, as the Commissioner notes, "[t]he ALJ stated that she considered the opinion evidence in accordance with the requirements

of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p and 063p, which explain how the Commissioner evaluates evidence from treating, examining, and non-examining medical sources (Tr. 18)." Dkt. No. 21 at 10. "But this statement, on its own, is not sufficient to satisfy *Newton*." *Gerkin v. Colvin*, No. 3:13-cv-1597-BN, 2014 WL 840039, at *6 (N.D. Tex. March 4, 2014); *see also Kneeland*, 850 F.3d at 761 ("And it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion.").

C.   The ALJ's decision to reject Dr. Zahabi's opinion is not substantially <u>supported by the evidence.</u>

But it ultimately does not matter whether the ALJ conducted the detailed analysis Section 404.1627(c) requires. Her decision to reject Dr. Zahabi's opinion constitutes legal error because it is not substantially supported by the evidence.

Contrary to Ms. Osborn's suggestion that the undersigned failed to "assess[] or even comment[] on" this argument in the initial FCR, Dkt. No. 24 at 2, the undersigned previously found that the ALJ's decision to reject Dr. Zahabi's opinion was substantially supported by the evidence, *see* Dkt. No. 23 at 9-12. The undersigned had reasoned that the ALJ was free to weigh the medical notes in the record and defer to an opinion of an examining physician, namely Dr. Jimmy Yoon. *Id.* at 8, 10. Dr. Yoon found that Ms. Osborn "had 5/5 strength throughout and intact reflexes," among other medical observations that the ALJ references in the decision. *See* Tr. at 19-20; 362-66.

But, as explained more thoroughly above, Dr. Yoon was not "called upon to explain how [Ms. Osborn's medical conditions] affected [her] work-related limitations."

*Wilkerson*, 2017 WL 109160, at *3 (internal quotation and citation omitted). As such, his findings do not constitute an opinion that contradicts Dr. Zahabi's conclusions about what Ms. Osborn is able to do during a work day. *See Anderson*, 2016 WL 299019, at *6 (citing *Jackson*, 2011 WL 816850, at *9) ("Medical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities [he] would be able to perform do not controvert the opinion of Plaintiff's treating physician.'"). And, while the ALJ cites to a DDS physician's opinion that appears to contradict Dr. Zahabi's opinion, that physician neither treated nor examined Ms. Obsorne. *See Villa*, 895 F.2d at 1024 (citing *Lamb*, 847 F.2d at 703; *Strickland*, 615 F.2d at 1109-10 (explaining that an ALJ may not solely rely on the reports of non-examining physicians when the non-examining physician's conclusions "either contradict or are unsupported by findings made by an examining physician").

Without support from a treating or examining physician's opinion, the ALJ's remaining observations that there is an alleged absence of clinical evidence supporting Dr. Zahabi's conclusions (and Ms. Osborn's complaints) are not sufficient to satisfy the substantial evidence standard. Ms. Osborn suffers from fibroymyaligia. As another judge in this District has explained, "[w]hen a claimant has an accepted diagnosis, such as fibromyalgia, that often lacks objective clinical findings, an allegation of an absence of objective clinical findings does not constitute good cause to reject opinions of treating physicians." *Bragg v. Comm'r of Soc. Security Admin.*, 567 F. Supp. 2d 893, 912 (N.D. Tex. 2008) (citing *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir.

2004), among other cases); *accord Wilkerson*, 2017 WL 109160, at *3 (internal quotation and citation omitted). An absence of objective clinical findings may be entirely consistent with the treating physician's conclusions. And the ALJ makes clear that she rejected Dr. Zahabi's opinion largely because Dr. Zahabi's assessment of Ms. Osborn's pain "cannot be seen on X-ray studies" and "cannot be readily ascertained upon reviewing his office notes." *See* Tr. at 19-20.

D.    <u>The ALJ's failure to consider the treating physician's opinion is material.</u>

"[F]ailure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But such a failure does not necessarily dictate a remand for further review. The Court will affirm a decision if the ALJ's error is harmless and remand if the plaintiff was prejudiced due to the error. *See id.* A plaintiff establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question. *Newton*, 209 F.3d at 458.

The ALJ could have reached a different outcome here. The ALJ found that Ms. Osborn was not disabled on two independent grounds. She found that Ms. Osborn's conditions are nonsevere, which would allow the ALJ to find that she is disabled without proceeding to the other steps of the disability analysis. *See* 20 C.F.R. § 404.1520(c) (noting that if "you do not have a severe impairment" then you "are,

therefore, not disabled."). She also found that, given Ms. Osborn's RFC, Ms. Oborne is able to perform jobs that exist in significant numbers in the national economy.

If the ALJ assigned Dr. Zahabi's opinion even some weight, she could have found that Ms. Osborn suffered from a "severe" condition. "In the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*." *Ruby v. Astrue*, No. 3:03-cv-1012-B-BF, 2009 WL 4858060, at *7 (N.D. Tex. 2009). This means that "an impairment can be considered as not severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). Accordingly, an impairment is "severe" if there is even a "minimal interference on a claimant's ability to work." *Ruby*, 2009 WL 4858060, at *8.

"Dr. Zahabi reported that her symptoms, especially severe pain, stiffness, and swelling in her arms, hands, and fingers, would preclude the claimant from meeting the demands of even sedentary work and cause her to be absent from work three times a month." Tr. at 20. These findings, if credited, would certainly be sufficient for the ALJ to find that Ms. Osborn's conditions have some impact on her ability to work, making them "severe."

The ALJ also could have reached a different conclusion with respect to Ms. Osborn's RFC and whether she could perform any jobs that exist in significant numbers in the national economy.

The ALJ determined Ms. Osborn's residual functional capacity without regard to Dr. Zahabi's conclusions concerning Ms. Osborn's inability to "meet the demands of sedentary work." *Id.* If Dr. Zahabi's opinion was afforded some weight, "the ALJ's RFC would surely have been different. This, in turn, would likely have affected the jobs available at step five of the sequential evaluation process, and [Ms. Osborn] may have been found disabled." *Kneeland*, 850 F.3d at 762.

II. **The ALJ erred by rejecting Dr. Christina Ryser's opinion, even though the ALJ was not required to conduct a Section 404.1527(c) analysis.**

Ms. Osborn takes issue with how the ALJ evaluated Dr. Christina Ryser's medical opinion.

She first contends that the ALJ erred by rejecting Dr. Christina Ryser's opinion without conducting the detailed analysis Section 404.1527(c) requires. Dkt. No. 24 at 10.

The undersigned disagrees. Section 404.1527(c) only requires the ALJ to consider its enumerated factors when he or she does not "give a treating source's medical opinion controlling weight." 20 C.F.R. § 404.1527; *see also Kneeland*, 850 at 760-61 (quoting 20 C.F.R. § 404.1527(c)(1) (noting that "[i]n addition to the rules surrounding treating physicians, the regulations make clear that opinions from examining physicians must be considered" and are generally given "'more weight ... than the opinion of a source who has not examined you'").

Ms. Osborn fails to establish or even allege that Dr. Ryser is her treating physician. *See* Dkt. No. 24 at 10 (describing Dr. Ryser's opinion as "the only MSS in the

record from an examining or treating source"); *see also* Dkt. Nos. 17 at 34; 23 at 20 (discussing how the ALJ "ignored" Dr. Ryser's opinion without characterizing her as either a treating or examining physician). The regulations define a treating physician as someone who the claimant "has, or has had, an ongoing treatment relationship." *See* 20 CFR § 404.1527. Dr. Ryser appears to have conducted one psychological evaluation of Ms. Osborn. There is no indication that they had the type of ongoing treatment relationship that would make Dr. Ryser a treating physician in this case. *See Jimenez v. Halter*, 251 F.3d 156, 156 (5th Cir. 2001) (noting that the claimant "failed to show that any physician had a continuing medical relationship with him that would justify considering such a doctor as his 'treating' physician as defined by" 20 C.F.R. § 404.1502).

But Ms. Osborn is correct to suggest that the ALJ's decision to reject Dr. Ryser's opinion is not substantially supported by the evidence. *See* Dkt. No. 24 at 13 (Ms. Osborn appearing to argue that the ALJ erred by assigning "very limited weight" to Dr. Ryser's opinion).

The Fifth Circuit has explained that "'[a]n ALJ can reject an examining physician's opinion only for the reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.'" *Kneeland*, 850 F.3d at 760 n. 53 (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). A non-examining physician's testimony "that he disagreed with [the examining physician's] assessment" did not constitute substantial evidence where

the non-examining physician "failed to identify any inconsistency between the [examining physician's] diagnosis and the medical record, except for his unsupported opinion." *Gudgel*, 345 F.3d at 470.

Here, the ALJ appears to have rejected Dr. Ryser's opinion largely because a non-examining physician concluded that Ms. Osborn only suffered "mild" mental work-related limitations. She reasoned that "the record reflects minimal reports/observations of mental health symptoms and the claimant's daily activities, which require on-task behaviors such as driving, do not support Dr. Zahabi's opinion that the claimant has decreased focus and memory." Tr. at 21. The ALJ also questioned how Dr. Ryser could conclude that Ms. Osborn "could manage her own benefits and understand the nature of her claim" and "establish[] rapport with treating and examining sources" yet also find that Ms. Osborn "could follow only 1-2 step instructions and would not be able to maintain effective social interaction." *Id.*

The ALJ's observations do not constitute substantial evidence for several reasons.

First, while the non-examining physician to whom Ms. Osborn defers did reach a contrary conclusion to Dr. Ryser, he did so without the benefit of Dr. Ryser's report and, as might be expected, without identifying any evidence in the record that would contradict Dr. Ryser's findings. *Cf. Gudgel*, 346 F.3d at 470 (finding that the ALJ did not have good cause to reject an examining physician's assessment even where the non-examining physician explicitly disagreed with the examining physician but failed to

identify any inconsistencies between the examining physician's diagnosis and the evidence).

Second, the undersigned cannot accept the ALJ's rationale that there are minimal reports/observations supporting Ms. Osborn's mental health symptoms where the ALJ did not discuss Dr. Schade's medical opinion at all. This omission is notable because, after taking Dr. Ryser's opinion into account, Dr. Schade also concluded that Ms. Osborn suffered from mental health symptoms.

Third, the ALJ's issues with Dr. Ryser's opinion appear to be based largely on her lay interpretation of what Dr. Ryser could and should have concluded. They do not constitute evidence that contradicts Dr. Ryser's findings. For instance, the ALJ questions how Dr. Ryser could conclude that Ms. Osborn is "not able to maintain effective social interaction" even though she "had no problems establishing rapport with treating and examining sources," among other activities that require "some interaction with the general public." Tr. at 21. By so doing, the ALJ made her own medical conclusions about whether a patient who had difficulty "maintain[ing] effective social interaction" would have problems establishing a rapport with medical professionals or doing other basic tasks that require at least some interaction with the public. *See id.* As a lay person, the ALJ is not permitted to "draw [her] own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003).

The ALJ's failure to properly weigh Dr. Ryser's opinion is potentially material.

Dr. Ryser found that Ms. Osborn could follow only 1-2 step instructions and would not be able to maintain effective social interaction. These findings, if credited, would allow the ALJ to find that she suffered from a "severe" condition – that is, one with even a "minimal interference on a claimant's ability to work." *Ruby*, 2009 WL 4858060, at *8.

The same is true with respect to the ALJ's conclusion that Ms. Osborn is able to perform jobs that exist in significant numbers in the national economy. The ALJ's RFC focused entirely on Ms. Osborn's physical limitations. As a result, there is no question that the RFC would have been different if the ALJ ultimately decided to give weight to Dr. Ryser's conclusions concerning Ms. Osborn's "difficulty with more detailed/complex instructions," inability to "sustain concentration and persist in a work-related activity at a reasonable pace," inability to "maintain effective social interaction on a consistent and independent basis," and "struggl[es] in dealing with normal pressures in a competitive work setting." Tr. at 423-24. "This, in turn, would likely have affected the jobs available at step five of the sequential evaluation process, and [Ms. Osborn] may have been found disabled." *Kneeland v. Berryhill*, 850 F.3d 749, 762 (5th Cir. 2017).

III. The ALJ erred by failing to consider State Agency Psychologist Dr. Mark <u>Schade's opinion.</u>

Ms. Osborn correctly notes that the ALJ failed to "discover, consider, or weigh … the findings and assessments of State Agency psychologist Mark Schade Ph.D." Dkt. No. 17 at 33. Dr. Schade "found that [Ms.] Osborn suffers from severe affective,

anxiety, and somatoform disorders that resulted in moderate difficulties in social functioning, and maintaining concentration, persistence, and pace." *Id.*

The Commissioner does not appear to dispute this contention. And the undersigned sees no reason to question it either. At no point does the ALJ discuss Dr. Schade's conclusions – even if she does discuss some of the evidence underlying it, such as Dr. Ryser's opinion.

The ALJ's failure to address Dr. Schade's opinion is legal error. "Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources." *Zapata v. Colvin*, No. 4:13-cv-340-Y, 2014 WL 4354243, at *4 (N.D. Tex. Sept. 2, 2014) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996)). ALJs "are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions." *Id.* at *4 (citing SSR 96-6p, 1996 WL 374180, at *2).

This failure is material largely for the same reasons that the ALJ's failure to consider Dr. Ryser's opinion is material.

Dr. Schade concluded that Plaintiff's ability to "understand and remember detailed instructions, "carry out detailed instructions," "maintain attention and concentration for extended periods of time," "complete a normal workday and workweek without interruptions from psychologically based symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods" were each "moderately limited" by her impairments. Tr. at 510-11.

If the ALJ gave them weight, Dr. Schade's findings regarding Ms. Osborn's "moderate" difficulties would be sufficient to find that Ms. Osborn suffered from a "severe" condition. After all, an impairment is "severe" if there is even a "minimal interference on a claimant's ability to work." *Ruby*, 2009 WL 4858060, at *8.

There is also no question that the RFC would have been different if the ALJ decided to give weight to Dr. Schade's conclusions concerning the "moderate" difficulties Plaintiff may experience at work due to her memory, attention span, ability to carry out instructions, pace, and other psychologically based symptoms. As stated, the ALJ's RFC focuses entirely on Ms. Oborne's physical limitations. Considering the psychological limitations that Dr. Schade identifies would surely change the RFC. "This, in turn, would likely have affected the jobs available at step five of the sequential evaluation process, and [Ms. Osborn] may have been found disabled." *Kneeland*, 850 F.3d at 762.

The Commissioner argues, and the undersigned initially concluded, that the ALJ's failure to consider Dr. Schade's opinion is harmless.

The Commissioner reasons that the vocational expert testified that jobs exist in significant number for someone with Ms. Osborn's capabilities." *See* Dkt. No. 21 at 20 (noting that "the ALJ submitted several hypothetical questions to the VE," including that "the VE consider an individual who 'would be limited to the performance of simple, routine tasks with occasional interaction with coworkers, supervisors, and the public").

But the ALJ does not include this part of the vocational expert's testimony in her decision. And courts "may affirm only on the grounds that the Commissioner stated for [her] decision." *Copeland*, 771 F.3d at 923 (citations omitted). Courts "may not reweigh the evidence or substitute [their] judgment for that of the Commissioner." *Audler*, 501 F.3d at 447. And the undersigned cannot presume that the ALJ would necessarily find all portions of the VE's testimony to be credible, at least when they are not a part of her decision.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 11, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE